a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KEITH MARK DILLON, Plaintiff | CIVIL ACTION NO. 1:16-CV-1699-P |
| VERSUS | CHIEF JUDGE DRELL |
| LANCE MOORE, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (42 U.S.C. § 1983) of pro se Plaintiff Keith Mark Dillon ("Dillon") (#111997). Dillon is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the East Feliciana Parish Prison in Clinton, Louisiana. Dillon alleges that his constitutional rights were violated when he was housed at Concordia Parish Correctional Facility ("CPCF"). Dillon names as defendants Warden Lance Moore, Linus Wilkerson, Ben Otwell, Charles Smith, E. W. Smith, Sheila Spinner, Willard Melton Pierce, and Captain Verrett.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## I. Background

Dillon alleges that he was assigned a job in the maintenance department at CPFC. However, in January 2016, when Dillon reported to work, Warden Lance Moore told him "not to go out." (Doc. 1, p. 12).

A week later, Dillon was informed by several maintenance trustees that Captain Wilkerson and Sgt. Otwell "decided to get rid of" Dillon's property by stealing it or allowing other trustees to take it. (Doc. 1, p. 12). Dillon was informed that all of the locks had been cut off of the lockers where his property was stored. (Doc. 1, p. 12). Dillon's property had been removed, and the lockers were burned. (Doc. 1, p. 12). Dillon alleges that some trustees saved what they could from the thieves, and stored the property at the "community center storage shed."

Dillon inquired about his property, but Warden Moore said he knew nothing about the locks being cut or items being "stolen." (Doc. 1, p. 12). Warden Moore told Dillon that his property at the community center was safe. (Doc. 1, p. 13).

The following month, Dillon was informed by Warden Moore that he was "going to reentry by order of DOC." (Doc. 1, p. 14). Dillon was told that he would be returning to CPCF after reentry and either reassigned to maintenance, or assigned another job working for the warden. (Doc. 1, p. 14). Someone from "administration" told Dillon that he was being sent to reentry because Shelia Spinner "put a hit out" on Dillon. (Doc. 1, p. 14).

Dillon was transferred to Winnsboro Correctional Facility, where he wrote grievances about the maintenance department officers, Captain Wilkerson, Sgt. Otwell, and Officer Smith. The grievances were rejected by Defendant Spinner. (Doc. 1, p. 15).

After completing the reentry program, Dillon was transferred to Hunt Correctional Center, where he was informed that he would be returning to CPCF.

Dillon filled out an emergency administrative remedy form because he thought he would be in danger at CPCF, but he was transferred that same day. (Doc. 1, p. 16). Dillon claims that he feared for his safety at CPCF. (Doc. 1, p. 18).

After his return to CPCF, Dillon told Warden Moore that he would drop his administrative grievances if Warden Moore agreed to: (1) send Dillon to the best work release in the state as a trustee until Dillon's work release eligibility date; (2) pay Dillon $9,500.00 for his lost property; (3) give Dillon clothes and steel toe work boots from the commissary; (4) allow Dillon to retrieve his belongings from storage; and (5) agree that Dillon could put a bid on a truck auctioned by the sheriff's office. (Doc. 1, pp. 18-19). Dillon alleges that Warden Moore agreed to the demands in exchange for Dillon dropping his grievances. (Doc. 1, pp. 19-20).

Dillon complains that his first demand was not met because the Terrebone work release center was closing. (Doc. 1, p. 21). Warden Moore told Dillon that he was trying to get Dillon into his second choice, West Baton Rouge's work release. (Doc. 1, p. 21). Dillon finally agreed to a transfer to East Feliciana Parish Prison because he believed he was in danger at CPCF. (Doc. 1, p. 25).

Warden Moore provided Dillon with clothes and "cheap boots" from the commissary, rather than the steel toe boots Dillon demanded. (Doc. 1, p. 23).

Eventually, Dillon asked to be placed in lockdown because he had been "defrauded and deceived into signing the drop grievance form." (Doc. 1, p. 24). Dillon's request was ignored.

Dillon complains that he was "lied to and deceived into dropping" his grievances. (Doc. 1, p. 24).

## II.    Law and Analysis

### A.    Dillon's complaint is subject to screening under §§ 1915(e)(2)(b) and 1915A.

Dillon is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Dillon's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, Dillon's complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### B.    Dillon cannot establish that he suffered a constitutional violation.

Dillon claims that he was denied his right to due process of law and equal protection. First, an inmate has no constitutional right to a grievance procedure.

Thus, an inmate has no due process liberty interest in having a grievance resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 374–75 (5th Cir. 2005).

Additionally, an inmate has no liberty or property interest in a work release program. See Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995) (prisoners have no property interest in work release employment); Welch v. Thompson, 20 F.3d 636, 644 (5th Cir. 1994) (prisoners have no liberty interest in work release employment). Without a liberty or property interest protected by the Due Process Clause, Dillon cannot show the violation of his constitutional rights.

Dillon provides no factual allegations to support an equal protection claim. To state an equal protection claim, an inmate must allege that he received treatment different from that received by similarly situated individuals, and that the unequal treatment stemmed from a discriminatory intent. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439–40 (1985). Discriminatory purpose implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group. See Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988). Dillon has not identified any unequal treatment or discriminatory intent.

To the extent Dillon seeks damages for the breach of his agreement with Warden Moore, his claim fails. Even if Warden Moore had breached a valid contract in violation of state law, there is no constitutional deprivation because the conduct did not "trespasses on federal constitutional safeguards." Jackson v. Cain, 864 F.2d 1235, 1252 (5th Cir. 1989) (citing Levitt v. University of Texas at El Paso, 759 F.2d

5

1224, 1230 (5th Cir. 1985), <u>cert.</u> <u>denied</u> <u>sub nom.</u> <u>Levitt v. Monroe</u>, 474 U.S. 1034 (1985)).

III.   <u>Conclusion</u>

For the foregoing reasons, IT IS RECOMMENDED that Dillon's § 1983 complaint be DENIED and DISMISSED, with prejudice, under §§ 1915(e)(2)(b) and 1915A.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.   Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _13th___ day of February, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge